IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ESTATE OF MICHAEL BURKLAND, | : | CIVIL ACTION |
| | : | |
| GABRIEL BURKLAND | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| DORLEEN BURKLAND, et al., | : | No.  11-5024 |
| Defendants. | : | |
| | : | |

**Goldberg, J.**                                                                          **January 3, 2012**

## MEMORANDUM OPINION

This case emanates from a pending homicide trial in Bucks County, Pennsylvania, where Dorleen Burkland is accused of shooting her husband, Michael Burkland ("the deceased").  Plaintiff, Gabriel Burkland, the son of Dorleen and Michael Burkland, alleges that he is entitled to insurance proceeds under a life insurance and accidental death policy, issued by Defendant, Metropolitan Life Insurance Company, Inc. (MetLife) on the life of his father.  Defendant, Dean Burkland, the brother of the deceased and the executor of the deceased's estate ("the Estate"), challenges the distribution of these proceeds to Plaintiff under Pennsylvania's Slayer's Act, 20 PA. CONS. STAT. § 8801-15, and the Employee Retirement Income Security Act ("ERISA").

Presently before the Court is Plaintiff's motion for summary judgment, which requests an order directing that the insurance proceeds be distributed to him by MetLife.  For the reasons stated herein, we will deny Plaintiff's motion and order that the proceeds remain with MetLife pending the outcome of the criminal proceedings in Bucks County.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**[1]

Plaintiff is the son of Dorleen and Michael Burkland.  Dorleen Burkland is accused of killing the deceased, her husband Michael, on October 3, 2010, and is currently represented by the Bucks County Public Defender's office.  The deceased was a participant in a life insurance and accidental death plan through his employer, United Airways. The plan was issued by Defendant, MetLife, and provided for $149,000 in total coverage.  Dorleen Burkland is named as primary beneficiary and Plaintiff is named as contingent beneficiary.  (Pl.'s State. Facts ¶¶ 1-9, 12; Estate Resp. State. Facts ¶¶ 1-9, 12.)

On April 20, 2011, Dorleen Burkland appeared before the Honorable Jeffrey L. Finley of the Bucks County Court of Common Pleas to discuss the status of her counsel for the pending homicide trial.  Plaintiff was present for this proceeding, and through his counsel, informed Judge Finley that Dorleen Burkland was in the process of disclaiming her rights to the life insurance policy and that Plaintiff, as contingent beneficiary, planned to gift a portion of the proceeds to Dorleen Burkland so that she could retain a private criminal defense attorney.  In fact, at the time of this hearing, Dorleen Burkland had already faxed correspondence to MetLife, stating that she "disclaim[ed] any and all rights to collect as primary beneficiary or otherwise under the group term life insurance policy that was in effect for decedent, Michael A. Burkland[.]" (Doc. No. 2, Exs. 1-3; Doc. No. 6, Ex. A, Doc. No. 11, Ex. B.)

On May 2, 2011, the Estate sent correspondence to MetLife asserting that Gabriel's "plan . . . violates the spirit, if not letter, of [Pennsylvania's] Slayer Act[,]" and may be the product of "undue influence" on the part of Dorleen Burkland.  The correspondence also stated that the Estate was

---

[1] Unless otherwise indicated, the facts discussed below are undisputed.

planning to seek an injunction in state court, "requesting that the proceeds of the life insurance policy be paid into the Trust established for the benefit of Gabriel Burkland under the last will and testament of Michael Burkland." (Doc. No. 2, Ex. 3.)  In response, MetLife put an "administrative hold" on the disbursement of proceeds under the policy, which presently remains in effect.[2] (Pl.'s State. Facts ¶¶ 18-20; MetLife Resp. State. Facts ¶¶ 18-20.)

On May 19, 2011, Plaintiff filed an emergency injunction petition in the Court of Common Pleas, Bucks County, Orphan Division, to prevent the estate from interfering in the delivery of the insurance proceeds.  On May 21, 2011, the Estate filed a cross petition for an injunction, seeking to prevent MetLife from distributing the funds until the dispute over the proceeds was resolved on the merits.  On May 24, 2011, a hearing was held on these petitions before the Honorable C. Theodore Fritsch, Jr.  Plaintiff testified that his mother had agreed to disclaim her interest in the deceased's life insurance policy after he informed her that he would use the proceeds to "pay out the sum that is required to give [her] private counsel."[3]  (Doc. No. 12, Ex. E, pp. 29-38.)

---

[2] Plaintiff notes that MetLife also refused to send Dorleen Burkland the appropriate paper work to finalize her disclaimer and effectuate the release of proceeds to Plaintiff.  Although MetLife initially sent Dorleen Burkland a "General Release and Renunciation of Rights" agreement to finalize the disclaimer process, the agreement contained a clerical error and was never filled out by Plaintiff.  MetLife did not send Dorleen Burkland a corrected version of the "General Release and Renunciation of Rights" agreement, after learning of the Estate's challenge to distribution under the deceased's insurance policy.  (Pl.'s Pet. ¶¶ 12-14; Doc. No. 2, Exs. 1-2.)

[3] Specifically, Plaintiff testified that after his mother was arrested, he removed $29,000 from a safety deposit box that was jointly owned by him and his mother to have money available for "[b]asic bills" and "house maintenance."  He explained that in subsequent telephone conversations with his mother, she "laid verbal claim to . . . the money in the safety deposit box" and wanted him to use it to hire a private criminal defense attorney on her behalf.  Plaintiff asserted that, after consulting an attorney of his own, he told his mother that he could use the proceeds of father's life insurance policy to hire private counsel for her, provided she disclaimed her interest as primary beneficiary.  (Doc. No. 12, Ex. E, pp. 29-38.)

On June 29, 2011, Judge Fristch denied Plaintiff's petition and granted the Estate's petition "in part insofar as [MetLife] is directed to maintain the status quo and refrain from disbursing life insurance proceeds . . . until further Order of the Court." (Doc. No. 12, Ex. F.)  On July 12, 2011, Plaintiff filed a "Petition for Payment of Insurance Proceeds," in the Orphan's Court of Bucks County, naming MetLife, Dorleen Burkland and the Estate as Defendants.  This petition requested a declaratory judgment declaring that Dorleen Burkland had disclaimed her benefits under the deceased's policy, thereby making Plaintiff the rightful beneficiary.  In the alternative, Plaintiff requested that Dorleen Burkland be adjudicated a "slayer," under Pennsylvania's Slayer's Act, such that he would be entitled to payment as the contingent beneficiary.

On July 22, 2011, Dorleen Burkland filed a pro se notice of removal regarding all state court proceedings, invoking federal question jurisdiction under ERISA.  No party involved in this litigation objected to, or challenged, this removal.  On August 15, 2011, MetLife filed an answer to Plaintiff's petition in this Court and raised claims of interpleader, requesting that Dorleen Burkland, Plaintiff and the Estate be ordered to settle this dispute "among themselves."  On September 19, 2011, the Estate also filed an answer in this Court to Plaintiff's petition and MetLife's claim of interpleader.  (Doc. Nos. 2, 6.)

On October 19, 2011, we held a status conference.  There, the parties agreed that discovery was not necessary and consequently, we entered a briefing schedule for summary judgment motions.  On November 11, 2011, Plaintiff filed a motion for summary judgment, which Defendants MetLife and the Estate oppose.  On December 15, 2011, oral argument was held on this motion.

## II.      SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." Id. at 322.

After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record" showing a genuine issue of material fact.  Fed. R. Civ. P. 56(c)(1)(A).  To survive a motion for summary judgment, the non-moving party must refer to specific facts in the record rather than "rely[ing] on unsupported assertions, conclusory allegations, or mere suspicions." Schaar v. Lehigh Valley Health Servs., Inc., 732 F.Supp.2d 490, 493 (E.D.Pa. 2010) (citing Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 461 (3d Cir. 1989)).  Evidence must be viewed in the light most favorable to the non-moving party.  Galena v. Leone, 638 F.3d 186, 196 (3d Cir. 2011).

## III.    LEGAL ANALYSIS

Plaintiff moves for summary judgment, asserting that he is entitled to receive the proceeds payable under the deceased's insurance policy, pursuant to 29 U.S.C. § 1104(a)(1)(D) of ERISA.[4] This provision requires the administrator of a plan to distribute benefits in accordance with "plan documents." See Kennedy v. Plan Admin. for DuPont Sav. & Inv. Plan, 555 U.S. 285, 300-03 (2009). Plaintiff contends that his mother has disclaimed her interest as primary beneficiary of the policy and thus, because the plan designates him as contingent beneficiary, MetLife should be ordered to turn the proceeds over to him. See (Pl.'s Br. at 4, 10-11.) The Estate disagrees and argues that distribution of the proceeds to Plaintiff would violate Pennsylvania's Slayer's Act, 20 PA. CONS. STAT. § 8801-15, and ERISA, because Plaintiff and Dorleen Burkland have "conspired" to use the proceeds to fund her defense on criminal homicide charges. The remaining Defendants, Dorleen Burkland and MetLife, have not taken a position on this issue.[5] (Estate Resp. at 10-16.)

In support of his motion, Plaintiff argues that: (1) the Estate does not have standing to challenge the distribution of proceeds under ERISA; and (2) the Estate's claims under "state law or otherwise"

---

[4] The life insurance and accidental death plan at issue in this case is an "employee welfare plan" that is covered by ERISA. See 29 U.S.C. § 1002(1), (3) (reflecting that ERISA covers "employee welfare plans," which are defined as plans established by an employer "for the purpose of providing for its participants or beneficiaries . . . benefits in the event of sickness, accident, disability, [or] death"); Egelhoff v. Egelhoff, 532 U.S. 141, 144 (2001) (acknowledging that life insurance plans provided by employers are "employee welfare plans").

[5] Dorleen Burkland, although a Defendant by name in this case, does not oppose Plaintiff's motion and her interests appear to be aligned with those of the Plaintiff. Defendant, MetLife, limits its opposition to Plaintiff's claim for attorney's fees and takes no position on the other issues presented to the Court. MetLife "seeks only to be dismissed with prejudice from this action upon either a judicial determination as to whom the group life insurance benefits are to be paid for or, alternatively, seeks leave to deposit the group life insurance benefits into the registry of the Court." (Pl.'s Br. at 10-11; MetLife Resp. at 1.)

have no bearing on Plaintiff's status as the rightful beneficiary of the proceeds under the "plan document" and ERISA. See (Pl.'s Br. at 4, 10-11.) We will address each argument in turn.

### A. The Estate's Standing Under ERISA to Contest Distribution to Plaintiff

Plaintiff claims that the Estate does not have standing under ERISA or the Slayer's Act to contest MetLife's distribution of the deceased's insurance proceeds. To assert a claim under ERISA, a party must have constitutional, statutory and prudential standing. Leuthner v. Blue Cross and Blue Shield of Northeastern Pennsylvania, 454 F.3d 120, 125 (3d Cir. 2006). Plaintiff contends that the Estate "lacks all three." (Pl.'s Mot. at 4.)

Constitutional standing is a question of a federal court's "power to resolve a dispute" under Article III of the Constitution. Graden v. Conexant Sys. Inc., 496 F.3d 291, 295 (3d Cir. 2007). To establish constitutional standing, and invoke federal jurisdiction, a party must: (1) have suffered an "injury in fact;" (2) establish a causal connection between the injury and the complained of conduct; and (3) demonstrate that the injury is likely to be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized," id., and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Whitmore v. Arkansas, 495 U.S. 149, 155-56 (1990) (quoting Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)). The United States Court of Appeals for the Third Circuit has described the "injury in fact" requirement as a "generous inquiry" as to whether the "plaintiff alleged some specific, 'identifiable trifle' of injury[.]" Bowman v. Wilson, 672 F.2d 1145, 1151 (3d Cir. 1982) (internal citations and quotations omitted).

Here, the Estate seeks to enforce the deceased's rights under a plan governed by ERISA. The Estate contends that it would be "aggrieved" if the deceased's life insurance proceeds were distributed

to Plaintiff at this time.  The Estate urges that distribution would be improper under ERISA and the

Pennsylvania Slayer's Act, because after allegedly killing the deceased, Dorleen Burkland attempted

to disclaim her interest in the policy so Plaintiff could effectively distribute the proceeds to her.  (Estate

Resp. at 7-8, 12-13; Doc. No. 12, Ex. E, pp. 29-38.)

We conclude that the Estate's allegations, along with the undisputed facts of record, are

sufficient to satisfy the "injury in fact" requirement.  The Estate, on behalf of the deceased, has a legally

protected interest in seeing that the deceased's insurance proceeds are not delivered in a manner that

would violate ERISA or the terms of the plan.[6]  See 29 U.S.C. § 1132(a)(1)(B)(3) (providing that a civil

action may be brought by a participant, beneficiary or fiduciary to "enjoin any act or practice which

violates any provision of [ERISA] or the terms of the plan[,]" or "obtain other appropriate equitable

relief").  Cf. Finn v. Dugan, 394 A.2d 595, 369 (Pa.Super. 1978) ("The law is clear that all actions that

survive a decedent must be brought by or [a]gainst a personal representative, duly appointed by the

Register of Wills").  The alleged invasion of this protected interest is "concrete and particularized," as

it effects the Estate in "a personal and individual way," and is "actual or imminent" given Dorleen

Burkland's attempt to disclaim her interest in the policy and Plaintiff's statement in court that he

intends to use the insurance proceeds to fund Dorleen Burkland's criminal defense.

The Estate has also satisfied the second and third elements necessary to establish constitutional

standing.   There is a clear "causal connection" between the Estate's imminent injury and the

complained of conduct.  Further, a decision directing that Dorleen's disclaimer is ineffective as a matter

of law or that the insurance proceeds should not be distributed to Plaintiff at this time would redress

---

[6] As we will discuss in more detail below, federal common law that has developed under
ERISA provides a basis for an interested party to challenge the distribution of insurance proceeds
that may profit the killer of the insured.

the Estate's asserted injury.[7]

Plaintiff also argues that the Estate does not have statutory or prudential standing in this matter. Statutory standing requires the Court to interpret "whether Congress has accorded *this* injured [party] the right to sue the defendant to redress his injury." Graden v. Conexant Sys. Inc., 496 F.3d 291, 295 (3d Cir. 2007). In the ERISA context, the prudential standing analysis is "inextricably tied" to the statutory standing question, which generally asks whether a party qualifies as a "participant" or "beneficiary" under the provisions of ERISA. Miller v. Rite Aid Corp., 334 F.3d 335, 340-41 (3d Cir. 2003); see Baldwin v. University of Pittsburgh Medical Center, 636 F.3d 69, 74-75 (3d Cir. 2011). Based on the body of precedent that follows, we disagree with Plaintiff and conclude that the Estate has statutory and prudential standing as the representative of a "participant" in the ERISA plan. Shea v. Esensten, 107 F.3d 625, 628 (8th Cir. 1997) ("We are persuaded that Mrs. Shea, as the representative of Mr. Shea's estate, has standing to assert her husband's ERISA claims"); Tolton v. American Biodyne, Inc., 48 F.3d 937, 941 (6th Cir. 1995) ("Furthermore, plaintiffs, who brought this action as representatives of Tolton's estate, have standing under ERISA"); Estate of J.D. Boss, Jr. v. Boss, 2011 WL 482874 at *3 (W.D.Ky. Feb. 4, 2011) ("At the time of his death, J.D. Boss, Jr., was an ERISA participant. The Estate, therefore, has derivative standing as a successor-in-interest"); Estate of Casella v. Hartford Life Ins. Co. et al., 2009 WL 2488054 at *4 (D.N.J. Sept. 11, 2009) ("The Court finds that decedent's estate has standing to sue as it is a representative of decedent, a participant in the ERISA

---

[7] We also note that the Estate may be entitled to the insurance proceeds at issue as a "tertiary beneficiary," provided Dorleen Burkland and Plaintiff are precluded from collecting. The Estate's potential monetary interest may provide an additional basis for constitutional standing. See (Estate Resp. at 12-14). Cf. Estate of Curtis by Curtis v. Prudential Ins. Co., 839 F.Supp.491, 495 (E.D.Mich. Nov. 29, 1993) (holding that estate could bring suit under ERISA where primary beneficiary allegedly killed decedent and estate would receive the money if the primary beneficiary was disqualified).

plan[.]")

### B. The Estate's Claims Under ERISA and Pennsylvania's Slayer's Act

Plaintiff urges that even if the Estate does have standing to contest the distribution of the policy's proceeds, its claims under "state law or otherwise" have no bearing on Plaintiff's status as the rightful beneficiary of the proceeds under the "plan document" and ERISA. More specifically, Plaintiff asserts that the "plan document" dictates that he is entitled to the proceeds as a result of Dorleen Burkland's purported disclaimer of interest, regardless of what he intends to do with the money.

While not entirely clear from an examination of Plaintiff's written submissions, Plaintiff's argument appears to be based upon the following propositions: (1) The Estate's claim under Pennsylvania's Slayer's Act is preempted by ERISA; and (2) ERISA's "plan document" rule applies without alteration in this case, despite the fact that Dorleen Burkland, the primary beneficiary, allegedly killed the deceased and stands to receive the benefit of his life insurance proceeds. See (Pl.'s Br. at 10-11.) At oral argument, Plaintiff's counsel more clearly stated that ERISA preempted the Estate's Slayer's Act arguments. (Transcript of Oral Argument, Dec. 15, 2011, p. 7.) For the following reasons, we conclude that it is unnecessary to decide whether ERISA preempts the Estate's claim under the Slayer's Act because under either the Slayer's Act or ERISA, the insurance proceeds at issue should not be distributed to Plaintiff at this time.

ERISA's preemption provision, 29 U.S.C. § 1144(a), states that ERISA "shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." This provision is "clearly expansive," New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co, 514 U.S. 645, 655 (1995), but federal courts must draw some reasonable limits on its scope, especially in areas traditionally reserved for state regulation. See De Buono v. NLSA-ILA

Medical & Clinical Servs. Fund, 520 U.S. 806, 812-15 (1997).  In evaluating whether a state law

"relate[s] to" an employee benefit plan, and is thereby expressly preempted, courts must "look both to

'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood

would survive,' as well as to the nature of the effect of the state law on ERISA plans."  Egelhoff v.

Egelhoff, 532 U.S. 141, 147 (2001) (quoting California Div. of Labor Standards Enforcement v.

Dillingham Constr., N.A., Inc., 519 U.S. 316, 325 (1997)).

Pennsylvania's Slayer's Act provides, in pertinent part, that "[n]o slayer shall in any way acquire

any property or receive any benefit as the result of the death of the decedent[.]"  20 PA. CONS. STAT.

§ 8802.  The Act defines a "slayer" as "any person who participates, either as principal or as an

accessory before the fact, in the wilful and unlawful killing of any other person."  20 PA. CONS. STAT.

§ 8801.  These directives "shall not be considered penal in nature, but shall be construed broadly in

order to effectuate the policy of [Pennsylvania] that no person shall be allowed to profit by his own

wrong, wherever committed."  Id. § 8815.

Our research has not revealed any authority that has determined whether the Pennsylvania

Slayer's Act is preempted by ERISA.[8]  Nor does the ERISA statute specifically address a "slayer"

situation.  Honeywell Sav. & Ownership Plan v. Jicha, 2010 WL 276237 at *6 (D.N.J. Jan. 15, 2010)

---

[8] But see Egelhoff v. Egelhoff, 532 U.S. 141, 143,147-50 (2001) (declining to reach issue
of whether state slayer statute is preempted by ERISA, but noting that, although "slayer" statutes
could "revoke the beneficiary status of someone who murdered a plan participant," the "principle
underlying the statutes–which have been adopted by nearly every State–is well established in the
law and has a long historical pedigree predating ERISA" and that "because the statutes are more
or less uniform nationwide, their interference with the aims of ERISA is at least debatable");
Mendez-Bellido v. Board of Trustees of Div. 1181, A.T.U. N.Y. Employees Pension Fund &
Plan, 709 F.Supp.329, 330-32 (E.D.N.Y. 1989) (holding that ERISA does not preempt New
York's slayer's statute); New Orleans Electrical Pension Fund v. DeRocha, 779 F.Supp. 845, 850
(E.D.La. 1991) (holding that ERISA does not preempt Louisiana's slayer's statute).

(acknowledging that none of "ERISA's provisions address the distribution of benefits to a beneficiary responsible for killing the plan participant").  However, where ERISA preempts state law but is itself silent on an issue, courts look to the "federal common law of rights and obligations" that has developed under ERISA-regulated plans.  McGurl v. Trucking Employees of North Jersey Welfare Fund, Inc., 124 F.3d 471, 481-82 (3d Cir. 1997) (providing that Congress envisioned an area of federal common law would develop where ERISA preempted state law and was silent on the issue).  Federal common law instructs that, no person "'should be permitted to profit from his own wrong.'"  Atwater v. Nortel Networks, Inc., 388 F. Supp. 2d 610, 615 (M.D.N.C. 2005) (quoting Prudential Ins. Co. v. Tull, 690 F.2d 848, 849 (4th Cir. 1982).  This common law principle has been interpreted to preclude the killer of a plan participant from collecting insurance proceeds in the ERISA context.  See Addison v. Metro Life Ins. Co., 5 F.Supp.2d 392, 393-94 (W.D. Va. 1998) (collecting cases).  Cf. New York Mutual Life Ins. Co. v. Armstrong, 117 U.S. 591, 600 (1886) ("It would be a reproach to the jurisprudence of the country, if on[e] could recover insurance money payable on the death of a party whose life he had feloniously taken").

Given the application of ERISA's general preemption provision and federal common law, it is thus unnecessary to determine whether ERISA preempts Pennsylvania's Slayer's Act.  This is because the principles underlying the Slayer's Act and ERISA require the same result and preclude distribution of the insurance proceeds to Plaintiff at this time.  See Honeywell, 2010 WL 276237 at *5 (noting that several district courts have found that "it was unnecessary to determine [whether ERISA preempts a state slayer's act] since federal common law provides the same result as a slayer statute" and taking this approach).

Although Dorleen Burkland has not been convicted of killing the deceased, she has been

charged with his death and awaits trial on first degree murder charges.  Six months after she allegedly

killed the deceased, Dorleen Burkland faxed a letter to MetLife seeking to disclaim her interest in his

life insurance policy.  Her "disclaimer" was provided pursuant to "an arrangement" she had with

Plaintiff.   As described by Plaintiff's counsel in the Bucks County Court, Dorleen Burkland "would

disclaim the policy, we'd get it paid out to [Plaintiff], and [Plaintiff] would use part of the policy

proceeds to pay for [Dorleen's] defense counsel."  (Doc. No. 6, Ex. A, pp. 3-4.)  At the preliminary

injunction hearing in Bucks County, Plaintiff stated that he was "pushing the disclaimer issue" to his

mother so that he could obtain the insurance money and use it to pay for her defense.  When asked what

he intended "to do with the money once [he got] the insurance proceeds[,]" he testified that his

"intentions would be to pay out the sum that is required to give my mother private counsel."  (Doc. No.

12, Ex. E, pp. 29-38.)

Given these circumstances, the arrangement between Dorleen Burkland and Plaintiff clearly

circumvents the principles of Pennsylvania's Slayer's Act and the federal common law developed under

ERISA.   These principles clearly dictate that individuals convicted of murdering another may not

receive financial benefits from the victim's death.  This long-standing rule would have little effect if,

after being charged with homicide, Dorleen Burkland could "disclaim" her interest in the victim's life

insurance policy and effectively collect the proceeds from Plaintiff prior to a judicial determination as

to her "slayer" status.

Atwater v. Nortel Networks, Inc, 388 F.Supp.2d at 612-13, a Middle District of North Carolina

case, supports our conclusion.  In Atwater, the primary beneficiary of an ERISA-covered plan was

charged with the murder of the insured.  The plan administrator distributed the insurance proceeds to

the primary beneficiary, after he was charged, but before he was convicted of murder.  After the

conviction, the estate of the insured sought to collect the insurance proceeds from the plan

administrator, arguing the proceeds should never have been distributed. The Atwater Court determined

that the administrator's distribution of the proceeds to the alleged murderer was a breach of its fiduciary

duty, reasoning that:

> The indictment made it at least foreseeable that [he] would be judicially determined to be the killer of the plan participant, thus giving rise to a fiduciary responsibility to act in response to such a formal accusation. If a pending judicial determination could serve to bar distribution to a particular beneficiary, it reasonably follows that [the plan administrator has] . . . a fiduciary responsibility to delay the distribution to that person until a judicial determination regarding that beneficiary's ability to receive plan benefits has been made."

Atwater, 388 F. Supp. 2d at 616.

Although Plaintiff's position as an uncharged individual in this case certainly creates a different

factual scenario than Atwater, the common sense principles espoused in Atwater apply here: If Dorleen

Burkland is convicted of the murder of her husband, she should not be entitled to the proceeds of his

life insurance policy. Permitting Dorleen Burkland to "disclaim" her interest in these proceeds now,

before her culpability can be determined, and allowing the distribution of these proceeds to a third party

who has clear intentions to transfer part of these proceeds to her, undermines the principles underlying

the Slayer's Act and federal common law. We thus conclude that MetLife should continue to hold the

insurance proceeds at issue pending final resolution of Dorleen Burkland's homicide trial.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment will be denied and the life

insurance and accidental death benefits at issue shall remain with Defendant, MetLife Insurance

Company, until the resolution of Dorleen Burkland's criminal case in the Bucks County Court of

Common Pleas.[9]

An appropriate Order follows.

---

[9] On December 16, 2011, Plaintiff filed a supplemental brief, asserting that "this Court cannot properly, consistent with the Supreme Court's First Amendment jurisprudence, deny Plaintiff summary judgment simply because Plaintiff intends to fund speech and petition the criminal court in support of his mother." Specifically, Plaintiff contends that it is within his first amendment right to "expend . . . his money for private defense counsel for his mother" and "petition the Government for a redress of grievances." (Doc. No. 17, Ex. A at 1-4.) The proceeds at issue, however, do not belong to Plaintiff until Dorleen Burkland disclaims her interest as primary beneficiary under ERISA and plan documents. As detailed above, Dorleen Burkland's purported disclaimer is without legal effect at this time, given her status as an alleged slayer and her "arrangement" with Plaintiff to reap the benefit of the insurance proceeds of her alleged victim.