IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ESTATE OF MICHAEL BURKLUND, | : | CIVIL ACTION |
| | : | |
| GABRIEL BURKLUND | : | |
|     Plaintiff, | : | |
|     v. | : | |
| | : | |
| DORLEEN BURKLUND, et al., | : | No. 11-5024 |
|     Defendants. | : | |
| | : | |

**Goldberg, J.**                                                                                          January 28, 2013

## MEMORANDUM OPINION

This life insurance dispute emanates from a homicide in Bucks County, Pennsylvania, which resulted in the conviction of Dorleen Burklund for the shooting of her husband, Michael Burklund ("the deceased"). Plaintiff, Gabriel Burklund, the son of Dorleen and Michael Burklund, alleges that he is entitled to insurance proceeds under a life insurance and accidental death policy, issued by Defendant, Metropolitan Life Insurance Company, Inc. (MetLife), on the life of his father. Defendant, Dean Burklund, the brother of the deceased and the executor of the deceased's estate ("the Estate"), challenges the distribution of these proceeds to Plaintiff under Pennsylvania's Slayer's Act, 20 Pa.C.S. §§ 8801-8815, and the Employee Retirement Income Security Act ("ERISA").

Before the Court is Plaintiff's second motion for summary judgment, which requests an order directing that the insurance proceeds be distributed to him by MetLife. For the reasons stated herein, we will grant Plaintiff's motion.

1

## RELEVANT BACKGROUND[1]

The deceased was a participant in a life insurance and accidental death plan through his employer, United Airways. The plan was issued by Defendant, MetLife, and provided for $149,000 in total coverage. Dorleen Burklund is named as primary beneficiary and Plaintiff is named as contingent beneficiary. (Doc. No. 21 at 2.)

On April 20, 2011, before her criminal trial, Dorleen Burklund appeared before Bucks County Court of Common Pleas Judge Jeffrey L. Finley regarding the status of her criminal counsel. Plaintiff was present for this proceeding, and through his counsel, informed Judge Finley that Dorleen Burklund was in the process of disclaiming her rights to the life insurance policy and that Plaintiff, as contingent beneficiary, planned to gift a portion of the proceeds to Dorleen Burklund so that she could retain a private criminal defense attorney. (Doc. No. 2, Exs. 1-3; Doc. No. 6, Ex. 1, Doc. No. 11, Ex. B.)

On May 2, 2011, the Estate sent correspondence to MetLife asserting that Plaintiff's "plan . . . violates the spirit, if not letter, of [Pennsylvania's] Slayer Act[.]" The correspondence also stated that the Estate was planning to seek an injunction in state court, "requesting that the proceeds of the life insurance policy be paid into the Trust established for the benefit of [Plaintiff] . . . under the last will and testament of Michael Burklund." (Doc. No. 2, Ex. 3.) In response, MetLife put an "administrative hold" on the disbursement of proceeds, which remains in effect. (Doc. No. 21 at 3.)

On May 19, 2011, Plaintiff filed an emergency injunction petition in the Court of Common Pleas, Bucks County, Orphan's Division, to prevent the Estate from interfering with

---

[1] Unless otherwise indicated, the facts discussed below are undisputed. A more complete review of the background of this case is provided in the Court's Memorandum Opinion of January 3, 2012, Doc. No. 21.

the delivery of the insurance proceeds. On May 21, 2011, the Estate filed a cross petition for an injunction, seeking to prevent MetLife from distributing the funds until the dispute over the proceeds was resolved on the merits. On May 24, 2011, a hearing was held on these petitions before the Honorable C. Theodore Fritsch, Jr. There, Plaintiff testified that his mother had agreed to disclaim her interest in the deceased's life insurance policy after he informed her that he would use the proceeds to "pay out the sum that is required to give [her] private counsel." (Doc. No. 12, Ex. E, pp. 29-38.)

On June 29, 2011, Judge Fritsch denied Plaintiff's petition and granted the Estate's petition "in part insofar as [MetLife was] directed to maintain the status quo and refrain from disbursing life insurance proceeds . . . until further Order of the Court." (Doc. No. 12, Ex. F.) On July 12, 2011, Plaintiff filed a "Petition for Payment of Insurance Proceeds," in the Court of Common Pleas, Bucks County, Orphan's Division, naming MetLife, Dorleen Burklund and the Estate as Defendants. On July 22, 2011, Dorleen Burklund filed a pro se notice of removal regarding all state court proceedings, invoking federal question jurisdiction under ERISA. No party involved in this litigation objected to, or challenged, this removal. On August 15, 2011, MetLife filed an answer to Plaintiff's petition in this Court and raised claims of interpleader, requesting that Dorleen Burklund, Plaintiff and the Estate be ordered to settle this dispute "among themselves." On September 19, 2011, the Estate also filed an answer in this Court to Plaintiff's petition and MetLife's claim of interpleader. (Doc. Nos. 2, 6.)

On November 10, 2011, before the commencement of Dorleen Burklund's criminal trial, Plaintiff filed his first motion for summary judgment before this Court, asserting that he was entitled to receive the proceeds payable under the deceased's insurance policy, pursuant to 29 U.S.C. § 1104(a)(1)(D) of ERISA. Plaintiff contended that MetLife should be ordered to turn

the proceeds over to him, because Dorleen Burklund had "disclaimed" her interest as primary beneficiary of the policy and that he was contingent beneficiary. (See Pl.'s Br., Doc. No. 10, at 4, 10-11.)

On January 3, 2012, this Court issued a Memorandum Opinion and Order denying Plaintiff's motion, finding that Dorleen Burklund's purported "disclaimer" of her interest was without legal effect. This ruling was premised on the representations made by Plaintiff before Judge Finley and the principles of Pennsylvania's Slayer's Act and the federal common law that has developed under ERISA. Specifically, we concluded that:

> If Dorleen Burkland [sic] is convicted of the murder of her husband, she should not be entitled to the proceeds of his life insurance policy. Permitting Dorleen Burkland [sic] to "disclaim" her interest in these proceeds now, before her culpability can be determined, and allowing the distribution of these proceeds to a third party who has clear intentions to transfer part of these proceeds to her, undermines the principles underlying the Slayer's Act and federal common law. We thus conclude that MetLife should continue to hold the insurance proceeds at issue pending final resolution of Dorleen Burkland's [sic] homicide trial.

(Mem. Op., Doc. No. 21 at 14.)

After Dorleen Burklund's first degree murder conviction, Plaintiff filed his second and current motion for summary judgment, which the Estate opposes. (Doc. Nos. 23, 24.) In support of the motion, Plaintiff has submitted an affidavit, indicating that he no longer intends to "spend any of the insurance proceeds on his mother's criminal defense, appeals, or otherwise for her benefit." (Doc. No. 23, Ex. C.)

II. **SUMMARY JUDGMENT STANDARD**

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those

portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." Id. at 322.

After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record" showing a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A). To survive a motion for summary judgment, the non-moving party must refer to specific facts in the record rather than "rely[ing] on unsupported assertions, conclusory allegations, or mere suspicions." Schaar v. Lehigh Valley Health Servs., Inc., 732 F.Supp.2d 490, 493 (E.D. Pa. 2010) (citing Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 461 (3d Cir. 1989)). Evidence must be viewed in the light most favorable to the non-moving party. Galena v. Leone, 638 F.3d 186, 196 (3d Cir. 2011).

## III. LEGAL ANALYSIS

Plaintiff moves for summary judgment, asserting that he is entitled to receive the proceeds payable under the deceased's insurance policy, pursuant to 29 U.S.C. § 1104(a)(1)(D) of ERISA.[2] This provision requires the administrator of a plan to distribute benefits in accordance with "plan documents." See Kennedy v. Plan Admin. for DuPont Sav. & Inv. Plan, 555 U.S. 285, 300-03 (2009). Plaintiff contends that, because Dorleen Burklund has been

---

[2] The life insurance and accidental death plan at issue in this case is an "employee welfare plan" that is covered by ERISA. See 29 U.S.C. § 1002(1), (3) (reflecting that ERISA covers "employee welfare plans," which are defined as plans established by an employer "for the purpose of providing for its participants or beneficiaries . . . benefits in the event of sickness, accident, disability, [or] death"); Egelhoff v. Egelhoff, 532 U.S. 141, 144 (2001) (acknowledging that life insurance plans provided by employers are "employee welfare plans").

5

convicted of the first degree murder of the deceased, she "is a killer or slayer within the purview of both federal common law and Pennsylvania's Slayer's Act and is precluded from receiving the insurance proceeds." Therefore, Plaintiff asserts that he is entitled to the insurance proceeds, because he is listed as the "contingent beneficiary," behind Dorleen Burklund. (Doc. No. 22.) Given the changed circumstances since our first Order of January 3, 2012, we now agree with Plaintiff's position.

Pennsylvania's Slayer's Act provides, in pertinent part, that "[n]o slayer shall in any way acquire any property or receive any benefit as the result of the death of the decedent[.]" 20 PA. CONS. STAT. § 8802. The Act defines a "slayer" as "any person who participates, either as principal or as an accessory before the fact, in the wilful [sic] and unlawful killing of any other person." 20 PA. CONS. STAT. § 8801. Similarly, the federal common law that has developed under ERISA instructs that, no person "should be permitted to profit from his own wrong." Atwater v. Nortel Networks, Inc., 388 F. Supp. 2d 610, 615 (M.D.N.C. 2005) (quoting Prudential Ins. Co. v. Tull, 690 F.2d 848, 849 (4th Cir. 1982)). This common law principle has been interpreted to preclude the killer of a plan participant from collecting insurance proceeds in the ERISA context.[3] See Addison v. Metro Life Ins. Co., 5 F. Supp. 2d 392, 393-94 (W.D. Va. 1998) (collecting cases). Cf. New York Mut. Life Ins. Co. v. Armstrong, 117 U.S. 591, 600

---

[3] ERISA includes a preemption provision, 29 U.S.C. § 1144(a), which provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." However, as discussed in our Memorandum Opinion of January 3, 2012, it is unnecessary to determine whether ERISA preempts Pennsylvania's Slayer's Act. This is because Pennsylvania's Slayer's Act and the federal common law that would apply if ERISA preempted Pennsylvania's Slayer's Act are essentially the same in a "slayer" situation. (Doc. No. 21 at 10-12); see Honeywell Sav. & Ownership Plan v. Jicha, 2010 WL 276237, at *5 (D.N.J. Jan. 15, 2010) (noting that several district courts have found that "it was unnecessary to determine [whether ERISA preempts a state slayer's act] since federal common law provides the same result as a slayer statute" and taking this approach).

(1886) ("It would be a reproach to the jurisprudence of the country, if on[e] could recover insurance money payable on the death of a party whose life he had feloniously taken").

In light of these principles, Dorleen Burklund is precluded from receiving the insurance proceeds on the life of the deceased under both Pennsylvania's Slayer's Act and the federal common law, because she is the convicted murderer of the deceased. Plaintiff, therefore, is entitled to the insurance proceeds under a straightforward application of ERISA's plan document rule, because he is the "contingent beneficiary" on the plan documents, behind Dorleen Burklund. See Provident Mut. Life Ins. Co. of Phila. v. Camerlin, 566 F. Supp. 1517, 1521 (W.D. Pa. 1983) ("When the primary beneficiary has killed the insured, there is a strong public policy against allowing the killer to profit from the crime. It would also seem to be appropriate that the act of the killer not destroy the interest of the contingent beneficiaries who are the *contemporary second choice* of the insurer to receive the insurance proceeds. Consequently, . . . most courts have, even in the absence of statutory authority, awarded insurance proceeds to the contingent beneficiaries rather than the insured's estate.") (emphasis in original).

The Estate, however, contends that Plaintiff is disqualified from receiving the proceeds as a result of "his announced and admitted conspiracy to wrongfully circumvent the requirements of the Slayer's Act[,]" thereby leaving the Estate as the proper recipient of the insurance proceeds. (Estate's Resp. at 8.) The Estate's argument is based upon the following language from Pennsylvania's Slayer's Act:

> **(a) Policies on life of decedent.** -- Insurance proceeds payable to the slayer as the beneficiary or assignee of any policy or certificate of insurance on the life of the decedent, or as the survivor of a joint life policy, shall be paid to the estate of the decedent, unless the policy or certificate designates some person not claiming through the slayer as alternative beneficiary to him.

7

20 Pa.C.S. § 8811(a). The Estate "believes that [Plaintiff's] intention to give the funds to the slayer, disqualifies him under [this provision] because he is claiming the proceeds 'through a slayer.'" (Estate's Resp. at 6-8.)

The Estate's argument is outdated and without merit for several reasons. First, the previous attempted arrangement between Dorleen Burklund and Plaintiff prior to her criminal trial does not control the outcome of this case in perpetuity, nor does it mean that Plaintiff is currently claiming the proceeds "through the slayer." Plaintiff's right to the insurance proceeds is presently based upon his designation as a "contingent beneficiary" in the plan documents, not, as previously was the case, on his status as a representative or beneficiary of Dorleen Burklund, who was attempting to fund her criminal defense. Therefore, we are unable to conclude that Plaintiff is "claiming through the slayer as an alternative to [her]" within the meaning of 20 Pa.C.S. § 8811(a).

The Estate also argues that Dorleen Burklund "attempted to name [Plaintiff] as a new beneficiary," thereby disqualifying him under the "legislative policy" announced in 20 Pa.C.S. § 8811(b), which relates to insurance policies on the "life of the slayer." We fail to see how this provision is relevant to this case, which pertains to a life insurance policy on the life of the deceased. We also reject the Estate's characterization that Dorleen Burklund's previous attempt to disclaim her interest was an attempt to "name" Plaintiff as a "new beneficiary." Plaintiff was named a contingent beneficiary by the decedent, not Dorleen Burklund. In any event, Dorleen Burklund has been adjudicated a "slayer" and thus no longer has an interest in the policy to "disclaim" or "assign." We, therefore, do not consider the validity of Dorleen Burklund's attempted "disclaimer" or "assignment" to impact our analysis.

Additionally, the Estate argues that the arrangement between Dorleen Burklund and Plaintiff prior to her criminal trial violated the general principles of Pennsylvania's Slayer's Act and federal common law, and it should continue to preclude him from receiving the insurance proceeds. In support of this argument, the Estate points to the Court's Memorandum Opinion of January 3, 2012, where we held that Dorleen Burklund's purported "disclaimer" of her interest in the insurance policy was without legal effect, given her status as an alleged slayer and her "arrangement" with Plaintiff to reap the benefit of the insurance proceeds of her alleged victim. (See Doc. No. 21 at 10-15 & n.9.) We did not hold, however, that Plaintiff's entitlement to the proceeds as a contingent beneficiary was forever destroyed as a result of this "arrangement."

The circumstances currently before the Court are vastly different than those at issue at the time of our Memorandum Opinion of January 3, 2012. Dorleen Burklund has been convicted, and thus is barred from receiving the insurance proceeds under Pennsylvania's Slayer's Act and ERISA. The "disclaimer" previously before the Court is no longer at issue, and Plaintiff is now entitled to the insurance proceeds under the clear language of the plan documents. Furthermore, to the extent that Plaintiff's stated intention is relevant to our consideration, he has submitted an affidavit providing that he no longer intends to "spend any of the insurance proceeds on his mother's criminal defense, appeals, or otherwise for her benefit[.]" (Doc. No. 23, Ex. C.) The Estate has not presented any evidence to refute this recent affidavit. We, therefore, reject the Estate's argument that Plaintiff is forever stripped of his rights as contingent beneficiary, as a result of the Court's previous decision.

Lastly, the Estate asserts that we should refrain from granting summary judgment until any criminal appeals have been resolved. We reject this argument and conclude that distribution of the insurance proceeds should not be delayed any further. In our previous Memorandum

9

Opinion, we directed that the "the life insurance and accidental death benefits at issue shall remain with Defendant, MetLife Insurance Company, until the resolution of Dorleen Burklund's criminal case in the Bucks County Court of Common Pleas." (Doc. No. 21 at 14.) Read in connection with our entire Memorandum Opinion, it is clear that this directive refers to the resolution of Dorleen Burklund's criminal trial, not all subsequent appeals, which could last for years. Dorleen Burklund has been convicted and was sentenced to life imprisonment on July 3, 2012. Her criminal trial before the Bucks County Court of Common Pleas has concluded.

Therefore, given Dorleen Burklund's conviction for the first degree murder of the deceased and Plaintiff's status as the contingent beneficiary, Plaintiff is entitled to the insurance proceeds on the life of the deceased under Pennsylvania's Slayer's Act and ERISA.

IV. **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment will be granted and the life insurance and accidental death benefits at issue shall be distributed to Plaintiff by Defendant, MetLife Insurance Company.

An appropriate Order follows.